IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY ALLEN PARSONS, | ) | |
| | ) | |
| Petitioner, | ) | C.A. No. 09-057 Erie |
| | ) | |
| v. | ) | |
| | ) | District Judge McLaughlin |
| FRANCISCO J. QUINTANA, | ) | Magistrate Judge Baxter |
| | ) | |
| Respondent. | ) | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.   RECOMMENDATION**

It is recommended that the Petition for Writ of Habeas Corpus filed by Petitioner, federal inmate Timothy Allen Parsons, be denied. It is further recommended that his motions for expedited relief, styled as motions for injunctive relief, should be denied.

**II.   REPORT**

Pending before the Court is the petition for writ of habeas corpus filed by Petitioner pursuant to 28 U.S.C. § 2241. In March 2009, he lost eligibility for early release after he was expelled from the Residential Drug Treatment Program ("RDAP"). Petitioner seeks an order from this Court directing the Respondent to reinstate his provisional early-release eligibility date, which he had received pursuant to 18 U.S.C. § 3621(e)(2)(B) when he was first accepted into the treatment program.

**A.   History**

**1.   Statutory Background**

In the Violent Crime Control and Law Enforcement Act of 1994 ("VCCLEA"), Pub.L. 103-322, and amendments thereto, Congress provided for the Bureau of Prisons (the "BOP" or the "Bureau") to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). To provide inmates with incentive to participate in the substance abuse programs, Congress vested the

BOP with the authority to reduce the sentences of certain inmates who successfully complete the programs. This authority is set forth in 18 U.S.C. § 3621(e)(2)(B), which provides:

> **Period of Custody**. . . The period a prisoner convicted of a nonviolent offense remains in custody *after successfully completing a treatment program may be reduced by the Bureau of Prisons*, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

(Emphasis added).

To accomplish the congressional mandate of the VCCLEA, the BOP provides a multipronged treatment delivery system as follows: (1) Drug Abuse Education Course; (2) Non-Residential Treatment Program; and (3) the RDAP, followed by Community Transitional Drug Abuse Treatment ("T-DAT"). (See ¶ 2 of Declaration of Dr. Kent Cannon, Drug Abuse Treatment Coordinator (attached to *Response*, Docket No. 13, and hereinafter cited to as "Dr. Cannon Decl."); see also Ex.[1] 19, BOP Program Statement ("P.S.") 5330.10, Drug Abuse Programs Manual).[2]

It is the third phase of the BOP's system – participation in the RDAP – that is at issue in this case. The RDAP has three components: (1) a unit-based residential program lasting between six to twelve months; (2) an institution transition phase, when possible; and (3) a community transitional services component during which the inmate is transferred to a Residential Re-Entry Center ("RRC") or to home confinement for up to six months. (See also P.S. 5330.10, § 5.2.1; Dr. Cannon Decl. ¶ 2). Upon successful completion of the RDAP and community treatment in the T-DAT, and assuming an inmate meets all of the eligibility requirements, the BOP may grant the inmate a sentence reduction of up to twelve months pursuant to 18 U.S.C. § 3621(e)(2)(B).

## 2. Factual Background

On March 30, 2006, the United States District Court for the Eastern District of Missouri

---

[1] Unless otherwise noted, all "Ex." citations are to those documents sequentially appended to the *Response*, Docket No. 13, and the *Response To Petitioner's Notice Of Exhaustion Of The Administrative Remedy Process*, Docket No. 19.

[2] P.S. 5330.10 was in effect at the time Petitioner was expelled from the RDAP. Following Petitioner's expulsion, it was superceded by P.S. 5330.11, Psychology Treatment Programs (March 16, 2009).

sentenced Petitioner to a sixty-month term of imprisonment, to be followed by four years of supervised release, for his conviction of Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. § 841(a)(1). His projected release date is July 24, 2010, assuming he receives all good time credits.

On September 19, 2007, Petitioner was found eligible to participate in the RDAP. On or around November 6, 2007, he was informed that he would be eligible for early release consideration pursuant to § 3621(e)(2)(B) upon the completion of the RDAP and the T-DAT. (Dr. Cannon Decl. ¶ 5). Petitioner signed an agreement acknowledging that any early release date he received would be provisional and that it may change. (*Agreement To Participate In RDAP*, Ex. 3). He further acknowledged that he understood that: (1) if he was expelled from the RDAP he would lose his eligibility for early release consideration; and, (2) if he received an incident report for any reason he could be expelled from the RDAP. (Id. at 2-3 ("I understand that I must be responsible for: .... following the Bureau of Prisons rules and regulations. When I incur an incident report because I failed to follow rules and regulations, I can be expelled from the program.")[3] The agreement also included the following provisions:

> All program participants agree to participate in classes/counseling/group sessions as designed by the BOP Psychology and Drug Treatment Staff.
>
> All program participants agree to refrain from any behavior disruptive to the program or to the participants and staff of the program.
>
> All program participants agree to complete all tasks as assigned.
>
> All program participants agree to take part in the program activities, including group work and homework as assigned.

(Id.)

On February 22, 2008, the BOP transferred Petitioner to FCI McKean. On April 29, 2008, he was placed in a RDAP class, commonly referred to as a cohort. (Dr. Cannon Decl. ¶ 7).

---

[3] Petitioner also was notified that *immediate expulsion* from the RDAP would result if he, pursuant to an incident report, was found by a Disciplinary Hearing Officer to have used or possessed alcohol or drugs; been violent or threatened violence against staff or another inmate; committed a 100 series prohibited act; or committed a prohibited act involving alcohol or drugs after completing the unit-based segment of the program. (*Agreement To Participate In RDAP*, Ex. 3, at 1).

Dr. Cannon is the Drug Abuse Program Coordinator at FCI McKean. In early 2009, he implemented the Modified Therapeutic Community ("MTC") model into the RDAP, in anticipation of the BOP's decision to adopt this model in its new program statement, P.S. 5330.11, Psychology Treatment Programs (March 16, 2009). (Dr. Cannon Decl. ¶ 9). Dr. Cannon explains in an affidavit attached to the *Response* that the MTC was implemented to "create[ ] an atmosphere where staff and participants all take ownership in the values and goals of the program. This is accomplished through several steps, one of which is the creation of a program philosophy statement." According to Dr. Cannon, the philosophy statement "is an overt statement of community values" which is recited at each community meeting to remind all members of their purpose. (Id.)

Petitioner's cohort developed the following philosophy statement after reviewing a similar one from USP Lewisburg:

> Today I am becoming a new man because I came to treatment for recovery. I will challenge irrational beliefs, form healthy relationships, break criminal relationships, and learn to live a balanced life. I will be responsible, honest, willing, open minded, caring, objective and display humility and gratitude. Today I will go forward with a purpose that comes from the knowledge of who I am, what I have learned, and what is still to be accomplished in this program and in my life.

(Dr. Cannon Decl. ¶ 10).

On February 6, 2009, Petitioner was issued a Warning for disrupting a RDAP Town Hall meeting by making a disparaging remark against the his cohort's philosophy statement. (*2/6/09 Warning*, Ex. 5). He signed the Warning "under duress." (Id.) Petitioner also was presented with a Behavioral Contract that was designed to set goals to remedy his behavior. (*Comprehensive Drug Treatment Program Behavioral Contract*, Ex. 6). Under the Behavioral Contract, Petitioner was required to write about his actions that caused him to receive the warning, and set forth steps that he could take to prevent further warnings. He was to present the paper, along with an apology, at the next town meeting. When he signed the Behavioral Contract, he wrote on it that his signature was being given "under duress." (Id.) He submitted a letter apology on February 9, 2009, but noted once again that his action was "under duress." (*2/9/09 Letter*, Ex. 7).

On March 2, 2009, Petitioner refused to recite the philosophy statement at a community

4

meeting. The next day, he received his second Warning. He was informed that the Warning was issued for the following reasons:

> Failure to actively engage in treatment as agreed to in [the Agreement to Participate in the RDAP] where it states ["]All program participants agree to participate in group sessions as designated by BOP Psychology and Drug Treatment Staff, and all program participants agree to take part in the program activities.["] More specifically, you did not recite the Program Philosophy/Statement at the Community Meeting on 3-2-2009. When questioned about this behavior, you stated you did not agree with the statement and said you would be lying if you recited it. The Philosophy/Statement is about making positive lifestyle changes and if you are not willing to participate this is interpreted as non-compliance and not satisfactorily progressing in the program.

(*3/3/09 Warning*, Ex. 8). Petitioner signed the Warning and another Behavioral Contract "under duress." (Id.)

On March 3, 2009, a meeting was held with several Drug Treatment Counselors, Dr. Cannon, and Petitioner, during which Petitioner was asked, but refused to re-sign, the Behavioral Contract. (Dr. Cannon Decl. ¶ 12). Dr. Cannon explains that it was concluded that Petitioner "was refusing to focus on his substance problem and he was disruptive to his cohort and the RDAP community as a whole. [Petitioner's] refusal to recite[ ] the philosophy statement that reflected the core values of the program and his insistence on signing everything under duress indicated to staff that he had not accepted the core values of the program despite his long attendance." (Id. ¶ 13).

During the meeting, Petitioner mocked Dr. Cannon for stuttering. Dr. Cannon prepared an incident report charging Petitioner with Insolence Towards a Staff Member, in violation of Prohibited Act Code 312. Upon review by the Unit Disciplinary Committee ("UDC") on March 6, 2009, the UDC found that Petitioner had committed the prohibited act. (Dr. Cannon Decl. ¶ 15; *3/3/09 Incident Report*, Ex. 10).

After the meeting, Petitioner was expelled from the RDAP. (*Notice of Expulsion from RDAP*, Ex. 9). The *Notice of Expulsion* recommended to Petitioner that he participate in the Non-Residential Drug Abuse Program and, if he had time, reapply for RDAP in the future. (Id.) Petitioner signed the *Notice of Expulsion* "under duress." (Id.) As a result of his expulsion from the RDAP, Petitioner's provisional early release date was rescinded. (Id.)

On April 3, 2009, Dr. Cannon denied a request Petitioner made to be reinstated into the RDAP because Petitioner did not have sufficient time to complete both the residential and the community (T-DAT) portions of the program.  Dr. Cannon also denied the request because Petitioner did not follow the recommendation that he participate in the Non-Residential Treatment Program after his expulsion from the RDAP, which indicated to him that Petitioner's attitude had not changed.  (*RDAP Notice To Inmate*, Ex. 11; Dr. Cannon Decl. ¶ 16).

In the meantime, on or around March 27, 2009, Petitioner filed his petition for writ of habeas corpus with this Court.  [Docket No. 5].  He claims that his constitutional rights have been violated and that he was unlawfully retaliated against for filing grievances.  In addition to his petition, he has filed two motions for injunctive relief [Docket Nos. 7 and 17], in which he requests expedited relief because, he contends, he is being irreparably harmed by his expulsion from the RDAP.  Warden Quintana filed a *Response* at Docket No. 13 and a *Response to Petitioner's Notice of Exhaustion of The Administrative Remedy Process* at Docket No. 19.  Petitioner's *Traverse* is lodged at Docket No. 16.

### B.   Subject Matter Jurisdiction

A challenge to a federal sentence as imposed must be made under 28 U.S.C. § 2255.  A claim concerning execution of a federal sentence the BOP is properly brought under 28 U.S.C. § 2241.  Bennett v. Soto, 850 F.2d 161 (3d Cir. 1988); Gomori v. Arnold, 533 F.2d 871 (3d Cir. 1976).  Because Petitioner is challenging the terms (*i.e.*, execution) of his sentence, his habeas petition is properly brought under 28 U.S.C. § 2241.

### C.   Exhaust Of Administrative Remedies

A federal inmate ordinarily may not bring a petition for writ of habeas corpus in federal court challenging the execution of his sentence until he has exhausted all available administrative remedies.  See, e.g., United States v. Wilson, 503 U.S. 329, 334-35 (1992); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996); see also Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000) ("we have consistently applied an exhaustion requirement to claims brought under § 2241"). Exhaustion promotes the following goals: (1) it allows the appropriate agency to develop a factual record and apply its expertise, which facilitates judicial review; (2) it permits agencies to

grant the relief requested and conserves judicial resources; and (3) it provides agencies the opportunity to correct their own errors and fosters administrative autonomy.  Muscato, 98 F.3d at 761-62 (citations omitted); see also Sanchez v. Miller, 792 F.2d 694 (7th Cir. 1986) (citing McKart v. United States, 395 U.S. 185, 195 (1969) for the proposition that "circumvention of the administrative process diminishes the effectiveness of the agency by encouraging prisoners to ignore its procedures.")  A habeas court may excuse a federal prisoner's failure to pursue his administrative remedies only in limited circumstances, such as when it is shown that his efforts would have been futile (meaning he would have been denied relief because, for example, BOP regulations that could not be deviated from required denial) and the goals of the exhaustion doctrine would not be promoted.  Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 239 n.2 (3d Cir. 2005); Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998).

The BOP administrative remedy process for inmates is set forth at 28 C.F.R. § 542.10 *et seq.*, and provides formal review of any complaint which relates to any aspect of the inmate's confinement.  Under this process, inmates first must attempt resolution of their complaints informally by discussing the matter with a member of their Unit Team.  28 C.F.R. § 542.13.  If informal resolution is insufficient to resolve the matter, the inmate may file a formal Administrative Remedy Request with the Warden within twenty days of the date on which the basis of the complaint occurred.  28 C.F.R. § 542.14.  If the inmate is not satisfied with the Warden's response, he may appeal the response to the Regional Director.  28 C.F.R. § 542.15.  If the inmate is dissatisfied with the Regional Director's response, he may file a national appeal with the Office of General Counsel, which is the final step in the administrative process.  See id.

       **1.**    **Petitioner Failed To Exhaust His Administrative Remedies Challenging His February 6, 2009, Warning**

In **Administrative Remedy No. 527247**, Petitioner challenged the Warning he received on February 6, 2009.  (Paragraph 3 of the Declaration of Vanessa Herbin-Smith, "Herbin-Smith Decl.", attached to *Response*; see also administrative remedy paperwork at Ex. 13).  Warden Quintana denied the request on March 30, 2009.  (Ex. 13 at 2).  The Regional Director denied Petitioner's appeal on May 8, 2009.  (Id. at 3).  He explained to Petitioner that he could file an

7

appeal with the General Counsel within thirty days. Petitioner did not file an appeal to the General Counsel. (Herbin-Smith Decl. ¶ 3; see also ¶ 2 of Herbin-Smith's Supplemental Decl., which is attached to Docket No. 19). Accordingly, any claims that he is making challenging that Warning must be denied for failure to exhaust.

  **2. Petitioner Exhausted His Administrative Remedies Challenging His March 3, 2009, Expulsion From The RDAP**

  On April 17, 2009, Petitioner filed **Administrative Remedy No. 530046**, in which he challenged his March 3, 2009, expulsion from the RDAP. (Herbin-Smith Decl. ¶ 3; administrative remedy paperwork at Ex. 15). On May 13, 2009, Warden Quintana denied his request for administrative relief. Warden Quintana explained that Petitioner had received two warnings, and also noted that he was found to have committed the prohibited act of Insolence Towards a Staff Member: "You were expelled from the RDAP based solely on your inappropriate, disruptive, and oppositional-defiant behavior, and your repeated refusals to participate in treatment." (Ex. 15 at 2).

  On June 18, 2009, the Regional Director denied Petitioner's appeal of Warden Quintana's decision. (Ex. 21). Petitioner filed an appeal to the Office of General Counsel, which had until November 2, 2009, to issue its response. That office issued no response, and therefore pursuant to BOP regulations, that appeal is considered to be denied. (Herbin-Smith's Supplemental Decl., ¶2 (citing 28 C.F.R. § 542.18)).[4] Thus, Petitioner has exhausted his administrative remedies with respect to his March 3, 2009, expulsion from the RDAP.

  **3. Petitioner Exhausted His Administrative Remedies Challenging His March 3, 2009, Incident Report**

  On March 10, 2009, Petitioner filed **Administrative Remedy No. 530120**, in which he challenged the incident report he received on March 3, 2009, for Insolence Towards a Staff Member, in violation of Prohibited Act Code 312. (Herbin-Smith Decl. ¶ 3; administrative remedy paperwork at Ex. 14). Warden Quintana denied his request for administrative relief, stating: "you mocked staff in a crude and contemptuous manner, and made disparaging and insulting remarks

---

[4] 28 C.F.R. § 542.18 provides: "If the Inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."

8

about staff's motives.... The incident report was written based on your behavior and remarks as observed by staff. The reporting staff's description of the incident is supported by staff who were present. Your rights have not been violated." (Ex. 14 at 5). The Regional Director denied Petitioner's appeal on May 8, 2009. (Ex. 14 at 2-3). On August 18, 2009, Harrell Watts, Administrator National Inmate Appeals, denied Petitioner's Central Office appeal because the evidence was sufficient to support the UDC's finding that Petitioner committed the prohibited act of Insolence Towards a Staff Member. (Ex. 20 at 2). Thus, Petitioner has exhausted his administrative remedies with respect to the incident report he received on March 3, 2009.

### D.     Petitioner Is Not Entitled To The Habeas Relief He Seeks

Congress has vested the BOP with the discretion to manage substance abuse treatment programs and to determine eligibility criteria for participation in the program. See Lopez v. Davis, 531 U.S. 230, 241 (2001); see, e.g., Pelissero v. Thompson, 170 F.3d 442, 447 (4th Cir. 1999). This Court has no authority to review discretionary aspects of BOP's decision to expel Petitioner from the RDAP. The only inquiry for this Court is whether Petitioner is in BOP custody "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2241(c)(3).

Petitioner's expulsion from the RDAP and the subsequent recession of his early-release eligibility did not violated any of the mandates in § 3621(e). Nor did it violate any of Petitioner's constitutional rights. He contends that his Fifth Amendment due process rights were violated, but such a claim fails because he had no liberty interest in a sentence reduction under § 3621(e)(2)(b). See Richardson v. Joslin, 501 F.3d 415 (5th Cir. 2007) (there is no liberty interest in a sentence reduction under § 3621(e); the denial of a sentence reduction would only cause an inmate to serve the remainder of his sentence under typical circumstances rather than imposing a punishment qualitatively different from the punishment characteristically suffered by a person convicted of a crime; and, the statute is discretionary) (citations omitted); see also Rublee v. Fleming, 160 F.3d 213, 217-18 (5th Cir. 1998).[5]

---

[5] Even if due process procedural guarantees applied, they were satisfied here because Petitioner received all the procedural safeguards to which he was entitled under the statute and regulations.

9

Petitioner also claims that his expulsion from the RDAP for refusing to recite the philosophy statement violated his First Amendment rights.  This claim is based on the false premise that he was expelled from the RDAP solely because he refused to recite the philosophy statement.  That is not accurate.  Petitioner was expelled because his actions in dealing with Dr. Cannon and his other drug counselors were disruptive and disrespectful, as evidenced by his mocking of Dr. Cannon for stuttering and his insistence in signing documents "under duress." (See Warden Quintana's response to Administrative Remedy No. 530046, Ex. 15).  In any event, Petitioner's First Amendment claim is moot because on March 3, 2009, he received the incident report for mocking Dr. Cannon for stuttering, and that offense alone was sufficient misconduct to warrant his expulsion from the RDAP.   (See *Agreement to Participate in RDAP*, Ex. 3 at 2-3).

Finally, Petitioner claims that he was unlawfully expelled from the RDAP in retaliation for filing administrative grievances.  The record before the Court refutes this claim.  It establishes the reasons why Petitioner was expelled from the RDAP and demonstrates that Dr. Cannon's and the BOP's actions were not in retaliation.

### E.     Petitioner's Outstanding Motions Should Be Denied

Also pending before the Court are two motions expedited relief.  [Docket Nos. 7 and 17]. Although Petitioner has styled these motions as requests for injunctive relief, in actuality he is moving for expedited review of his entire petition.  These motions should be dismissed as moot in light of this recommendation that the petition for writ of habeas corpus be denied.

### F.     Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement.  United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).

### III.     CONCLUSION

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules for Magistrate Judges, the parties are allowed 14 days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have 14 days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: December 18, 2009